IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON EUGENE DEOCAMPO, et al.,

    Plaintiffs,                           CIV. NO. S-06-1283 WBS GGH

    vs.

CITY OF VALLEJO, et al.,

    Defendants.                     ORDER

_____/

        The parties submitted on May 8, 2007, a proposed stipulation and order regarding confidentiality and sealing of documents in this litigation, and agreeing to submit documents to the court for *in camera* review. On May 14, 2007, this court denied the parties stipulated protective order, and directed defendants to submit documents for *in camera* review within 15 days of this order, along with applicable substantive objections. On May 22, 2007, defendants submitted their substantive objections to accompany their documents submitted earlier for *in camera* review. Plaintiffs also submitted letter briefing on May 22, 2007.

BACKGROUND

        Plaintiffs are three residents of Vallejo who were arrested on March 28, 2003 by defendants Vallejo Police Officers Potts and Patzer, along with backup defendant Officer Jensen. Plaintiffs allege excessive force and various other claims under 42 U.S.C. § 1983, as well as failure to properly supervise and train, and an informal custom or policy of tolerating the use of

excessive force.  The complaint also contains state law claims.

Defendants have now submitted various police personnel records for *in camera* review in response to plaintiffs' special interrogatories, set one, number 6, and plaintiffs' request for production of documents, set one, numbers 11, 13, and 14.  This discovery seeks information concerning complaints made and internal affairs investigations of Officers Potts, Patzer, and Jensen, in the five years prior to the incident at issue in this case, which concern excessive force, wrongful arrest or detention, or racially discriminatory treatment.  The requests also seek personnel files, evaluations, reviews, assignment records, training records and disciplinary records of these defendants during the same five year period.

STANDARDS

General.  "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party...."  Fed. R. Civ. P. 26(b)(1).  Relevancy is to be considered broadly, to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389.  Accordingly, the court must determine whether the information sought is relevant and not privileged.

Federal law applies to privilege based discovery disputes involving federal claims, even if supported by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993);[1] Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D.Cal. 1990).  Privileges are narrowly construed, because they impede the full and fair discovery of the truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991).  Further, the party asserting a privilege has the burden to establish that it applies.  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

---

[1] Despite the observations in a few cases that Pagano had been implicitly overruled by the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling ever took place.

The Supreme Court has reemphasized that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86 (9th Cir. 1997).

In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state law claims, courts disagree about the extent to which state privilege law remains applicable in discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled. Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court.)  This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent significantly assists in applying privilege law to discovery disputes.  See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D. 548 (E.D.Cal. 1990).  Other courts, however, disagree.  See, e.g., Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E.D.Cal. 1997) (stating that Pagano/Martinez/Cook have been overruled);[2] Allen v. Woodford, 2007 WL 309485 (E.. Cal. 2007).

This court considers state law in mixed federal/state claims.  See Pagano. While federal law is controlling, id. at 687, state law is nevertheless relevant, especially in mixed claims where one of the elements of the federal claim is that a *state* actor was acting under color of *state*

---

[2] Jackson is based on the questionable premise that the Supreme Court's failure to consider the issue impliedly overrules cases discussing the issue.

3

law when the federal right was violated – a category which includes every 42 U.S.C. § 1983 action.[3] It has been the policy of this court, "when state privilege law is consistent, or at least compatible, with federal privilege law," to read the two together "in order to accommodate the legitimate expectations of the state's citizens." Id. at 688; accord Martinez, 132 F.R.D. at 681 ("application of state rules [is appropriate] when that application would not be inconsistent with federal law"); but see Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp.2d 1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); Jackson, 175 F.R.D. 653, 654 (E.D.Cal. 1997) (same). Several reasons justify this policy. First, as previously mentioned, the Supreme Court explicitly noted in Jaffe that the matter is unsettled.

Second, not only this court, but others as well, use state law to assist in defining the parameters of federal privilege. See, e.g., Memorial Hospital etc. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981); Hysell v. Pliler, 2007 WL 273882 *1 (E.D. Cal. 2007); Gottleib v. Wiles, 143 F.R.D. 235, 237 (D.Colo. 1992); Wei v. Bodner, 127 F.R.D. 91, 94-95 (D.N.J. 1989); Unger v. Cohen, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); Lora v. Board of Education, 74 F.R.D. 565 (E.D.N.Y. 1977).

Third, federal courts frequently look to state law for guidance in § 1983 lawsuits. Indeed, the Supreme Court has recognized:

> In 42 U.S.C. 1988, Congress quite clearly instructs federal courts to refer to state statutes when federal law provides no rule of decision for actions brought under § 1983 . . . . [B]y its terms, §1988 authorizes federal courts to disregard an otherwise applicable state rule of law only if the state law is inconsistent with the Constitution and laws of the United States.

Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980) (quotations and citations omitted).

---

[3] Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

4

Further, the Court has acknowledged:

> This statutory reliance on state law obviously means that there will not be nation-wide uniformity on these issues [contemplated by §1988].

Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978).  See also Moor v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does not permit wholesale incorporation of state causes of action, but state law may supplement established federal law).  The preceding Supreme Court cases, while not directly on-point with the privilege issues presented by this discovery motion, nevertheless stand as strong authority for the principle that application of state law is not foreign to § 1983 jurisprudence.  Lower court cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities," Kelly v. City of Stockton, 114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to consider congressional intent that state law play an important, and at times dispositive, role in § 1983 litigation.[4]

Fourth, recognition of important state interests which do not conflict with federal law is a bedrock principle of our federal system.  "Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state laws."  Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case).  While it is at times necessary to flex the federal muscle when federal and state law conflict, such flexing should be done only as a last resort.  While preemption is not the issue here, there is no reason to ignore basic principles of federalism in applying privilege law.

\\\\\

---

[4] While the notion of national uniformity in federal practice, assuming that such is possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it was with the usurpation of state law where such was not necessary.

Finally, this entire action, including the federal § 1983 claim, could have been brought in state court.[5] The state court would apply state privilege law. In addition, in a federal court civil rights case in which the federal claims drop out, it is not beyond the pale to have a case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only state claims. In such cases, only state privileges seemingly would apply. Thus, in mixed claim cases where federal and state privileges are consistent, federal cases which fail to consider state privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege standards, depending on whether the lawsuit is brought in state or federal court, or whether federal claims ultimately survive.[6]

The inevitable question is – if the state and federal privileges at issue are consistent, why not simply apply federal privilege law? As discussed in Pagano, the point of considering state law as a guide is not to determine whether a specific privilege exists, but to determine how to perform the "balancing" that most privilege determinations, state or federal, require. Judges frequently are tempted to create multi-pronged tests for deciding federal common law privilege issues, born from individual creativity (and sometimes from the myopia of having considered the issues in particular cases). In contrast, similar state privileges frequently are codified privileges which have received the attention and consideration of the peoples' representatives in the respective legislatures, including competing considerations of any balancing applicable to those privileges. In terms of setting policy, the wisdom of the collective legislature is generally greater than the wisdom of particular judges. Our system of government is based on this premise. Moreover, the standards set forth by the legislature are generally more

---

[5] Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims. Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

[6] Cf. Menses v. U.S. Postal Service, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since Federal Tort Claims Act cases can be brought only in federal court, there is a need for national uniformity in rules of evidence, and no corresponding need to apply state privilege law even though the substance of the claims is decided by reference to the state law).

structured and more specific, and therefore provide a uniform starting point for any analysis. Therefore, it makes little sense to avoid using as a guidepost standards the legislature has already provided.

For all of the above reasons, in deciding whether privilege should preclude disclosure of documents in a civil rights case, this court will continue to consider applicable state statutes establishing policy and criteria for disclosure. Jackson, supra and its progeny are incorrect in their premise that the undersigned's cases have been overruled, and respectfully, incorrect in their substance.

Governmental Privilege. The federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names: (1) the "official information privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment discrimination case which raised only federal claims); (2) the "law enforcement privilege," In re Department of Investigation of City of New York, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and civil functions); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law enforcement privilege, that law enforcement privilege is somewhat narrower than official information privilege); and (3) a type of "executive privilege," Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992). The federal privileges are based on the following rationale:

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re Dept. of Investigation, 856 F.2d at 484.

/////

/////

This federal "qualified" governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records. Cal. Penal Code § 832.7.[7] Peace officer personnel records may be disclosed only pursuant to court order. Id. Disclosure requires "good cause" (Cal. Evid. Code §1043),[8] relevance, and unavailability by other means (Cal. Evid. Code §1045). [9]

---

[7] Cal. Penal Code § 832.7 provides in part:

(a) Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

[8] Cal. Evidence Code § 1043 provides in part:

(a)  In any case in which discovery or disclosure is sought of peace officer or custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .
(b)  The motion shall include . . . (3) Affidavits showing good cause for the discovery or disclosure sought ...

Cal. Evid. Code § 1046 requires the party alleging excessive force who seeks disclosure to include a copy of the police report setting forth the circumstances under which the party was stopped and arrested. Such procedural nuances of asserting privilege in state court, including who must assert the privilege, how it must be asserted, or who bears the burden of establishing the privilege or its exception do not concern the court. Rather, the substantive disclosure criteria and the strength of the state's interest in preventing disclosure, as demonstrated by the statutes, are the matters of concern.

[9] Cal. Evid. Code § 1045 provides:
(a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.

(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

(1) Information consisting of complaints concerning conduct

8

The California statutes codifying the governmental privilege balance the need for disclosure with the government's legitimate need to acquire and maintain confidential information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19 Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California Legislature understood quite well the need for some secrecy in government affairs, and was aware that permitting unrestricted disclosure might chill the ability of government officials to obtain candid, confidential information from persons otherwise reluctant to become involved or influenced by interests of self-preservation.  It is critical to note that Cal. Evid. Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, *so long as they are relevant* to pending

> occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.
>
> (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.
>
> (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.
>
> (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information.   "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case." Martinez, 132 F.R.D. at 682.  That analysis is confirmed.

9

litigation. Accordingly, relevance is the dispositive factor in directing disclosure of internal affairs investigations.[10]

<u>Individual Privilege</u>. In considering whether the privacy interests of individuals outweigh the need for disclosure of information in a civil rights case such as this, this court will continue to consider the following factors in balancing individual interests against the need for disclosure of sensitive information:

> (1) the probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of that encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits for most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment.

<u>Pagano</u>, 145 F.R.D. at 698-699.

<u>IN CAMERA REVIEW</u>

Both parties have submitted letter briefs. Defendants have submitted for *in camera* review personnel and training files, as well as Internal Affairs files documenting the incident underlying this case and other complaints against defendants Potts, Patzer, and Jensen. The court has reviewed the files submitted and the arguments of the parties.

<u>Governmental Interests</u>.

Portions of the files concern events which are not relevant to the claims in this action as they do not pertain to how the defendant officers may have conducted themselves in performing their duties in regard to this incident or similar incidents.

On the other hand, other complaints of use of excessive force, wrongful arrest or detention, or racially discriminatory treatment, by defendants Potts, Patzer and Jensen, are

---

[10] Internal affairs investigations are "investigations of complaints" covered by Cal. Evid. Code § 1045. See <u>City of Fresno v. Superior Court</u>, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296 (1988).

relevant to this case. Such matters may form much of the core of plaintiffs' case against the City of Vallejo, since a municipality may be liable for a § 1983 claim only if it can be shown that it has failed to train, fostered, or ratified the actions of its personnel such that the alleged misconduct can be said to be a custom or policy of the municipality. See e.g., Davis v. City of Ellensberg, 869 F.2d 1230, 1235 (9th Cir. 1989). There is merit to plaintiffs' argument that any file demonstrating complaints of similar misconduct lodged against these defendant officers are potentially relevant to the claims made herein.

Internal Affairs File Underlying This Action (#2003-06)

The court finds the internal affairs file concerning the incident in this case, #2003-06, is relevant. However, a portion of that file refers to individuals who are not parties to this action. It is a 19 page report located near the end of this IA file, which is dated "3/31/2003 13:00:51," on the first page, and which contains CLETs information regarding the plaintiffs in this case, but also identifies non-parties. Defendants shall redact any identifying information of individuals not parties to this action from this report, and then produce the entirety of IA file #2003-06.

Training Logs

Documents identified as training logs shall be produced in full.

Personnel Files

Personnel files of defendants Patzer, Potts, and Jensen are for the most part irrelevant and/or private. Only the following portions of those files shall be produced: Performance Reports for Jeremie Patzer, dated July 23, 2004 thru July 23, 2005, and dated July 23, 2003 to July 23, 2004; Counseling Memo for Jeremie Patzer, dated August 26, 2005; Performance Report for Jason Potts, dated December 4, 2003 to December 4, 2004; Performance Report for Eric Jensen, dated May 6, 2003 to May 6, 2004.

\\\\\

\\\\\

<u>Other Citizen Complaints and Internal Affairs Investigations</u>

These files, numbered 2002-28 (citizen complaint), 2002-16 (Internal Investigation), and 2003-03 (Internal Investigation) involve allegations of excessive force for incidents which occurred close in time to the incident at issue in this case. Therefore, they are relevant and shall be produced.

<u>Individual Privacy Interests</u>

The court has considered whether the privacy rights of individuals outweigh plaintiffs' need for the information contained therein. The court is mindful that plaintiffs have offered to enter into an appropriate stipulated protective order. Since plaintiffs have agreed to stipulate to an appropriate protective order, the court finds limited encroachment on individual privacy rights. Moreover, to the extent that the complaints ordered produced involve matters not of public record, none of the complaints lodged implicate particularly sensitive matters. To the extent that they involve matters of public record, encroachment is minimized. The court finds none of the files ordered to be produced implicate traditionally off limits areas. Moreover, plaintiffs' ability to obtain the information elsewhere is limited. Any impingement of the rights of others is limited, and societal interests tip in favor of disclosure of relevant information in civil rights cases. Accordingly, the court finds plaintiffs' need for the information outweighs the individual privacy rights of individuals participating in the investigations submitted for *in camera* review.

<u>CONCLUSION</u>

Accordingly, after *in camera* review, IT IS ORDERED that only those portions of the submitted files outlined above shall be produced. Defendants shall produce those files to plaintiffs by **June 5, 2007**, subject to an appropriate stipulated protective order to be prepared by plaintiffs which meets the requirements set forth in this court's order of May 14, 2007.

DATED: 6/1/07                               /s/ Gregory G. Hollows

deocampo1238.ic                              UNITED STATES MAGISTRATE JUDGE