1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10
                            ----oo0oo----
11

12   JASON EUGENE DEOCAMPO; JESUS      CIV. NO. 2:06-1283 WBS CMK
     SEBASTIAN GRANT; and JAQUEZS
13   TYREE BERRY,                      MEMORANDUM AND ORDER RE:
                                       ATTORNEY'S FEES AND COSTS
14              Plaintiffs,

15        v.

16   JASON POTTS, individually and
     in his capacity as a Vallejo
17   police officer; JEREMY
     PATZER, individually and in
18   his capacity as a Vallejo
     police officer; ERIC JENSEN,
19   individually and in his
     capacity as a Vallejo police
20   officer; and DOES 1 through
     25, inclusive,
21
                Defendants.
22

23
                            ----oo0oo----
24

25        Plaintiffs Jason Eugene Deocampo, Jesus Grant, and

26   Jaquezs Berry brought this action against defendants Jason Potts,

27   Jeremy Patzer, and Eric Jensen arising out of alleged police

28   misconduct.  After a thirteen-day trial, the jury found that

                                  1

1  Potts and Jensen had used excessive force in the course of
2  arresting Deocampo and awarded Deocampo $50,000 in damages.  The
3  jury did not award damages to Grant or Berry.  Plaintiffs now
4  seek attorney's fees and expenses under 42 U.S.C. § 1988, and
5  defendants seek to recover costs pursuant to Federal Rule of
6  Civil Procedure 54(d) and Eastern District Local Rule 292.

7  I.   Attorney's Fees

8        Section 1988 permits the court, in its discretion, to
9  award reasonable attorney's fees to a prevailing party in an
10  action under 42 U.S.C. § 1983.  42 U.S.C. § 1988(b).  A
11  "prevailing party" is one who succeeds on any significant issue
12  in the litigation, resulting in a "material alteration of the
13  legal relationship of the parties."  Tex. State Teacher's Ass'n
14  v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989).  While
15  defendants do not dispute that Deocampo was a prevailing party or
16  that he is entitled to attorney's fees under § 1988, they dispute
17  the size of the fee award plaintiffs request.

18        Courts typically determine the amount of a fee award
19  under § 1988 in two stages.  First, courts apply the "'lodestar'
20  method to determine what constitutes a reasonable attorney's
21  fee."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir.
22  2013) (citations omitted).  Second, "after computing the lodestar
23  figure, district courts may adjust that figure pursuant to a
24  variety of factors."  Id. at 1209 (citation and internal
25  quotation marks omitted); see also Kerr v. Screen Guild Extras,
26  Inc., 526 F.2d 67, 70 (9th Cir. 1975) (enumerating factors on
27  which courts may rely in adjusting the lodestar figure).  The
28  Ninth Circuit has emphasized that a district court's application

2

1   of the <u>Kerr</u> factors should reflect the extent to which those

2   factors "bear on the reasonableness of a fee award." <u>Morales v.</u>

3   <u>City of San Rafael</u>, 96 F.3d 359, 361 (9th Cir. 1996).   In

4   determining the size of an appropriate fee award, the Supreme

5   Court has emphasized that courts need not "achieve auditing

6   perfection" or "become green-eyeshade accountants."   <u>Fox v. Vice</u>,

7   --- U.S. ---, 131 S.Ct. 2205, 2217 (2011).   Rather, because the

8   "essential goal of shifting fees . . . is to do rough justice,"

9   the court may "use estimates" or "take into account [its] overall

10   sense of a suit" to determine a reasonable attorney's fee.   <u>Id.</u>

11       A.   <u>Lodestar Calculation</u>

12          1.   <u>Hours Reasonably Expended</u>

13       Under the lodestar method, "a district court must start

14   by determining how many hours were reasonably expended on the

15   litigation, and then multiply those hours by the prevailing local

16   rate for an attorney of the skill required to perform the

17   litigation." <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1111

18   (9th Cir. 2008).   In determining an appropriate fee award, "the

19   district court should exclude hours 'that are excessive,

20   redundant, or otherwise unnecessary.'"   <u>McCown v. City of</u>

21   <u>Fontana</u>, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting <u>Hensley v.</u>

22   <u>Eckerhart</u>, 461 U.S. 424, 434 (1983)).

23       That standard is qualified by the Ninth Circuit's

24   admonition that, as a general rule, "the court should defer to

25   the winning lawyer's professional judgment as to how much time he

26   was required to spend on the case." <u>Moreno</u>, 534 F.3d at 1112;

27   <u>see also</u> <u>E-Pass Techs., Inc. v. 3Com Corp.</u>, Civ. No. 00-2255 DLJ,

28   2007 WL 4170514, at *6 (N.D. Cal. Nov. 14, 2007) ("[T]he court

1   will not second-guess reasonable attorney conduct of a litigation

2   strategy for the case.").  This principle applies with particular

3   force to a plaintiff's attorney in a civil rights case, who--as

4   is the case here--typically works on a contingency basis, and

5   therefore has little incentive to expend unnecessary hours.  See,

6   e.g., Moreno, 534 F.3d at 1112 ("It would be the highly unusual

7   civil rights case where [a] plaintiff's lawyer engages in

8   churning."); Blackwell v. Foley, 724 F. Supp. 2d 1068, 1080 (N.D.

9   Cal. 2010) ("[I]f anything, an attorney working on contingency is

10  less likely to expend unnecessary hours because the payoff is too

11  uncertain.").

12          Plaintiffs have submitted a billing statement

13  reflecting 517.95 hours billed by attorney Gayla Libet, 481.85

14  hours billed by attorney John Burris, 383.20 hours billed by

15  attorney DeWitt Lacy, and 146.50 hours billed by paralegals.

16  (Decl. of John Burris ("Burris Decl.") Ex. B (Docket No. 183-2).)

17  Defendants object to a majority of this time as "excessive,

18  redundant, or otherwise unnecessary."[1]  (Defs.' Opp'n at 4-10

19  (Docket No. 192.)  While defendants object to 234 discrete time

20  entries, these objections reiterate several common contentions,

21  and the court will discuss them separately.

22          a.   Excessive Billing

23          Despite defendants' objections, there is little

24  evidence that plaintiffs' counsel spent an excessive number of

25  
    _____

26      [1]   Defendants present these objections in an itemized
    statement of objections.  (See Defs.' Itemized Objections to
27  Pls.' Billing Statements ("Defs.' Objections") (Docket No. 194).)
    For ease of reference, the court will refer to billing entries as
28  they are numbered in this statement.

                                4

hours working on this matter.  While defendants frequently compare the number of hours that their attorneys spent on a task to the number of hours that plaintiffs' attorneys spent on a task, these comparisons do not support the conclusion that plaintiffs' counsel billed an excessive number of hours.  See Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1287-88 (9th Cir. 2004) (noting that courts should not "compare the total hours" spent by each side to determine whether those hours suggest "excessiveness or needless duplication"); Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1151 (9th Cir. 2001) ("Comparison of the hours spent in particular tasks by the attorney seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive.").

Defendants also object to several billing entries on the basis that plaintiffs' counsel inappropriately staffed multiple lawyers on tasks that required only one lawyer and that these staffing decisions resulted in unnecessary duplication of effort.  Although the Ninth Circuit has instructed courts to "examine with skepticism claims that several lawyers were needed to perform a task," it has also emphasized that staffing multiple lawyers on a single task is not alone evidence of excessive billing.  Reed, 388 F.3d at 1286; see also Moreno, 534 F.3d at 1113 (emphasizing that "[f]indings of duplicative work should not just become a shortcut for reducing a fee award without identifying just why the requested fee was excessive").

Although defendants have "direct[ed] the court to particular billing entries" they find excessive, they have

5

provided no specific reasons why the assignment of multiple attorneys to particular tasks was objectionable.  <u>Sunstone Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.</u>, 646 F. Supp. 2d 1206, 1214 (E.D. Cal. 2009) (Shubb, J.).  Numerous courts have recognized that staffing multiple attorneys on a single task may improve a party's chance of success in litigation.  <u>See, e.g.</u>, <u>PSM Holding Corp. v. Nat'l Farm Fin. Corp.</u>, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("[D]ivision of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings.  Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." (citation and internal quotation marks omitted)); <u>cf.</u> <u>United States v. City & County of San Francisco</u>, 748 F. Supp. 1416, 1421 (N.D. Cal. 1990) (noting that "the presence of several attorneys at strategy sessions for complex civil rights class actions may be crucial to the case").

        Likewise, although defendants object to several time entries spent on office conferences, "[a] conference with only one participant is no longer a conference," and "[t]he upshot of accepting [this] view would be to hold that all conferencing by [plaintiffs'] attorneys was excessive and duplicative."  <u>Prison Legal News v. Schwarznegger</u>, 561 F. Supp. 2d 1095, 1103-04 (N.D. Cal. 2008), <u>aff'd</u>, 608 F.3d 446 (9th Cir. 2010) (citations and internal quotation marks omitted).  Absent any specific evidence that plaintiffs' decision to staff multiple attorneys on particular tasks was excessive, the court will not reduce the billed hours of plaintiffs' counsel on this basis.  <u>See</u> <u>Moreno</u>, 534 F.3d at 1114 (noting that the "district court may not set the

1  fee based on speculation as to how other firms would have staffed

2  the case").

3        Defendants also object to several billing entries on

4  the basis that the attorney had billed for a task that he or she

5  had previously billed for.  In particular, defendants contend

6  that the hours Libet spent reviewing and summarizing the criminal

7  trial transcript and defendants' internal affairs files in 2013

8  were excessive because she had billed for similar work in 2007.

9  (See generally Defs.' Objections 103-116; Defs.' Opp'n at 4.)

10 The Ninth Circuit has recognized that "[w]hen a case goes on for

11 many years," some degree of duplication is justifiable because a

12 "lawyer needs to get up to speed with the research previously

13 performed."  Moreno, 534 F.3d at 1112.  Here, Libet's need to

14 review these files a second time does not reflect any failing on

15 her part, but resulted instead from a four-year period in which

16 the case was stayed due to the City of Vallejo's bankruptcy

17 proceedings.  (See Docket No. 70.)  These hours therefore do not

18 reflect unnecessary duplication of effort, and the court will not

19 reduce them.

20       Although the court finds that a majority of the billing

21 entries submitted by plaintiffs' counsel are not excessive or

22 unnecessary, it concludes that one entry submitted by Libet on

23 June 6, 2007, is excessive.  (See Defs.' Objections 39.)  That

24 entry reflects that Libet spent sixteen hours drafting,

25 reviewing, revising, and faxing a summary of the criminal trial

26 transcript, as well as making several phone calls.  Plaintiffs

27 have not explained why Libet spent sixteen hours on these tasks,

28 particularly given the additional time she billed for summarizing

1   the criminal trial transcript the days immediately before and

2   after.  (See id. 38, 40.)  The court will therefore reduce this

3   entry by fifty percent or a total of eight hours.

4        b.   Block Billing

5        "Block billing is the time-keeping method by which each

6   lawyer and legal assistant enters the total daily time spent

7   working on a case, rather than itemizing the time expended on

8   specific tasks."  Welch v. Metro. Life Ins. Co., 480 F.3d 942,

9   945 n.2 (9th Cir. 2007) (citation and internal quotation marks

10  omitted).  "[B]lock billing makes it more difficult to determine

11  how much time was spent on particular activities."  Id. at 948;

12  see also Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th 672,

13  689 (4th Dist. 2000) (noting that block billing "render[s] it

14  virtually impossible to break down hours on a task-by-task

15  basis").  Additionally, "block billing hides accountability and

16  may increase time by 10% to 30% by lumping together tasks."

17  Yeager v. Bowlin, Civ. No. 2:08-102 WBS JFM, 2010 WL 1689225, at

18  *1 (E.D. Cal. Apr. 26, 2010), aff'd, 495 Fed. App'x 780 (9th Cir.

19  2012) (citing The State Bar of California Committee on Mandatory

20  Fee Arbitration, Arbitration Advisory 03-01 (2003)) (internal

21  quotation marks omitted).  This court has therefore concluded

22  that "the usage of block billing is fundamentally inconsistent

23  with the lodestar method."  Id.

24        Although the Ninth Circuit has held that district

25  courts may not account for block billing by applying an across-

26  the-board reduction to the hours claimed in a fee petition,

27  courts may apply a percentage reduction to those hours that are

28  actually block-billed.  Welch, 480 F.3d at 948; Mendez v. County

8

of San Bernadino, 540 F.3d 1109, 1129 (9th Cir. 2008) (noting that block billing provides "legitimate grounds for reducing or eliminating certain claimed hours"); Nat'l Res. Def. Council v. Locke, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011) (noting that any reduction in hours "must be tailored to those hours that were actually billed in block format") (internal quotation marks and citation omitted).  Courts in the Ninth Circuit have reduced up to thirty percent of the hours that are block-billed.  See, e.g., Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1222-23 (9th Cir. 2010) (thirty percent); Jones v. Metro. Life Ins. Co., 845 F. Supp. 2d 1016, 1031 (N.D. Cal. 2012) (twenty percent).  The court also retains discretion not to reduce hours that are purportedly block billed if those time entries "are detailed enough for the [c]ourt to assess the reasonableness of the hours billed."  Campbell v. Nat'l Passenger R.R. Corp., 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010).

Burris, Libet, and Lacy all engaged in significant amounts of block billing.  This block billing takes two different forms.  First, there are some time entries in which a block of time is billed for a single broad task.  For instance, on August 1, 2013, Burris billed 12.1 hours for "Trial Preparation: Meetings with Witnesses." (See Defs.' Objections 203.)  On July 22, 2013, Burris billed 10.2 hours for "Trial Preparation: Prepare Jury Instructions and Voir Dire." (See id. at 167.)  These billing entries do not contain sufficient information to permit the court to "assess the reasonableness of the hours billed," and are therefore improper.  Campbell, 714 F. Supp. 2d at 1103.

9

1          Second, there are other time entries in which a block

2     of time is billed for several discrete tasks.  For instance, on

3     June 24, 2007, Libet billed 6.75 hours for seven discrete tasks,

4     each of which were separated by semicolons, without describing

5     how much time she spent on each task.  (See id. at 46.)  Although

6     plaintiffs contend that her itemized billing entries do not

7     constitute block-billing as that term is defined by Welch and its

8     progeny, these entries still constitute improper block billing

9     because they do not contain an "itemization of the amount of time

10     spent by the fee applicant on each discrete task." Yeager, 2010

11     WL 1689225, at *1 (emphasis added).

12          Having reviewed plaintiffs' billing statements, the

13     court finds that 197.7 of Burris's 481.85 hours,[2] 187.7 of Lacy's

14     383.2 hours,[3] and 175.15 of Libet's 517.95 hours[4] were improperly

_____

[2]       That time consists of the following time entries, as
noted in defendants' itemized statement of objections: 143
(12.00); 146 (10.10); 158 (10.50); 162 (12.30); 167 (10.20); 169
(13.40); 177 (11.00); 179 (12.00); 183 (14.00); 187 (11.80); 193
(12.60); 197 (11.70); 203 (12.10); 207 (12.60); 210 (11.60); 215
(11.80); and 231 (8.00).

[3]       That time consists of the following time entries, as
noted in defendants' itemized statement of objections: 159
(10.50); 166 (7.40); 171 (9.70); 175 (6.20); 181 (12.00); 186
(14.00); 191 (11.80); 194 (10.00); 196 (11.70); 200 (3.70); 202
(12.10); 204 (3.20); 208 (12.60); 212 (11.60); 219 (11.80); 223
(10.70); 227 (8.20); 229 (6.00); 230 (6.50); and 232 (8.00).

[4]       That time consists of the following time entries, as
noted in defendants' itemized statement of objections: 3 (2.00);
4 (2.50); 6 (3.00); 8 (3.00); 9 (3.00); 10 (2.00); 11 (6.00); 12
(3.00); 13 (3.00); 14 (6.00); 15(3.00); 19 (6.50); 20 (8.00); 21
(4.00); 25 (5.00); 26 (3.00); 27 (8.00); 28 (7.00); 29 (8.00); 30
(2.00); 33 (4.00); 34 (3.50); 35 (2.00); 38 (7.50); 40 (4.50); 43
(2.00); 46 (6.75); 47 (9.25); 48 (4.00); 49 (8.00); 72 (2.65); 78
(8.00); 124 (4.00); 128 (10.00); 168 (5.00); and 170 (6.00).

          As explained later in this Order, the court reduces
several of Libet's other time entries because they are entirely
duplicative of one another, or because they consist entirely of

1    block-billed.  The court will apply a twenty percent reduction to

2    these hours, resulting in a total reduction of 35.03 hours of

3    Libet's time, 39.54 hours of Burris's time, and 37.54 hours of

4    Lacy's time.[5]  A number of other entries that defendants

5    characterize as improper block billing contain sufficient detail

6    for the court to assess their reasonableness, and therefore merit

7    no reduction.  See Campbell, 714 F. Supp. 2d at 1103.

8                    c.   Duplicative Time Entries

9            Defendants also object to several of Libet's time

10   entries on the basis that they are duplicative of one another.

11   As explained above, it is not appropriate for the court to reduce

12   Libet's hours on the basis that she duplicated the work of other

13   attorneys, or that she performed work in 2013 that she had also

14   _____

15   clerical or secretarial work.  Although those entries are also
     block-billed, the court declines to apply a twenty percent
16   reduction to those entries because the reductions it imposes
     instead are sufficient to account for the inefficiencies or time
17   spent on non-billable tasks that block billing obscures.  The
     Ninth Circuit has explicitly admonished courts that imposing this
18   sort of double penalty on billed hours is improper.  See Moreno,
     534 F.3d 1106 (holding that "double counting the reduction in
19   hourly rate for some tasks . . . is impermissible" (citing
     Cunningham v. County of Los Angeles, 879 F.2d 481, 489 (9th Cir.
20   1988)).
          [5]   At oral argument, the court raised the possibility that
21   it might provide plaintiffs an opportunity to submit a revised
     billing statement itemizing the time that plaintiffs' attorneys
22   spent on each discrete task.  However, based on its review of
     plaintiffs' billing statements, the court lacks confidence that
23   plaintiffs could identify how much time was spent on discrete
     tasks based on records that are several months--if not years--
24   old.  Moreover, plaintiffs' attorneys are experienced civil
     rights litigators and should have understood that their billing
25   statements would be subject to close scrutiny in attorneys' fees
     proceedings.  In light of these considerations, the court will
26   apply a percentage reduction to plaintiffs' billing statements in
     lieu of permitting plaintiffs' attorneys to submit a revised
27   statement.

28

                                    11

performed in 2007.  See Moreno, 534 F.3d at 1112.  The court nonetheless finds that several of Libet's time entries are virtual carbon copies of one another and are thus improperly duplicative.  See id. at 1113 (noting that courts may reduce hours based on "a specific reason for believing that work is excessive or duplicative"); cf. Locke, 771 F. Supp. 2d at 1212 (noting that "fees are not recoverable for . . . time entries that appear to have been accidentally duplicated").

On August 21 and 22, 2007, Libet billed eight hours for six discrete tasks.  (See Defs.' Objections 66-67.)  Those billing entries are identical to one another.  On May 9, 10, and 11, 2013 Libet billed 6.2 hours for seven discrete tasks spread across two billing entries each day.  (See id. at 103-108.)  Each day's billing entries are identical to one another.  Finally, on May 12 and 13, 2013, Libet billed a total of seven hours a day for a total of six discrete tasks, which were spread out over two identical billing entries on each day.  (See id. at 109-112.) The court will count only one of each of these sets of duplicate entries, amounting to a total reduction of 27.2 hours in time.

On May 14, 15, and 16, 2013, Libet recorded three identical billing entries for 3.8 hours each day consisting of two or three discrete tasks.  (See id. at 115, 116, 120.)  On May 14, 15, 16, and 17, 2013, Libet recorded four separate identical billing entries for 11.00 hours each day consisting of four or five discrete tasks.  (See id. at 113, 117, 119, 121.)  The court is especially skeptical of these entries because they indicate that Libet worked for exactly 14.8 hours per day for three consecutive days on exactly the same tasks.  See In re Gill, B.R.

No. 1:12-18909 WRL, 2013 WL 4853307, at *4 (E.D. Cal. Sep. 10, 2013) (disallowing a lawyer and her paralegal from recovering fees when they submitted thirty-four identical billing entries); cf. Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1178 (N.D. Cal. 2012) (finding that an attorney's billing records showing that he worked between sixteen and twenty hours on five consecutive days, as well as exactly eighteen hours on two days the next week, were not credible and reducing his fee award). Because these entries are entirely duplicative, the court will permit Libet to bill for only one 3.8-hour entry and one eleven-hour entry during the period between May 14 and May 17, 2013. This amounts to a reduction of 40.6 hours of time.

On June 30 and July 1, 2, and 3, 2007, Libet recorded four identical billing entries of eight hours apiece to review and revise a series of discovery requests. (See Defs.' Objections 49, 50, 52, 54.) Although these entries are identical to one another, it is inappropriate to reduce her bill to only one such entry because it is highly unlikely that she only worked eight hours on this task out of the thirty-two she billed for it. The court will therefore reduce these entries by fifty percent, or a total of sixteen hours. These reductions sum to a total of 83.8 hours of time reduced because of duplicative time entries.[6]

                d.   Non-Billable Activities

---

[6] Defendants also object to a set of six identical time entries, three by Libet and three by Lacy, on April 26, 29, and 30, 2013 for "Telephone Calls and E-Mails" regarding the date of the mediation conference. (See Defs.' Objections 86-90.) The court determines that these time entries, which amount to one hour apiece, are reasonable and therefore imposes no reduction on these hours.

The Supreme Court has cautioned that "[h]ours that are not properly billed to one's client are also not properly billed to one's adversary." Hensley, 461 U.S. at 434. Seizing upon this maxim, defendants object to several billing entries on the basis that they reflect activities which lawyers may not bill for.

Defendants object to several of Libet's billing entries on the basis that they reflect non-billable clerical or secretarial work. (See generally Defs.' Opp'n at 4.) The Ninth Circuit has recognized that work that is "clerical in nature . . . should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable. Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009); see also Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) (noting that time expended on "purely clerical or secretarial tasks" may not be recovered under § 1988). In particular, time spent on tasks like "calendaring deadlines, confirming papers were filed, organizing files, and electronically filing documents" is not properly billable. In re Mohsen, 473 B.R. 779, 795 (N.D. Cal. 2012). Upon review of Libet's billing entries, it appears that eighteen hours[7] that Libet billed were comprised of purely clerical or secretarial tasks, and the court will reduce her time by eighteen hours.

Defendants also object to several of Libet's time entries related to plaintiffs' filing of amended exhibit and witness lists. (See generally Defs.' Opp'n at 6.) Defendants

---

[7] That time consists of the following time entries, as noted in defendants' itemized statement of objections: 16 (1.00); 60 (5.50); 61 (2.50); 81 (6.00); and 139 (3.00).

contend that the need to file these amended lists arose only because plaintiffs' initial filings contained confidential information, and thus the time Libet spent as a consequence of those mistaken filings is not compensable.  (See id.)  The court agrees that Libet may not recover attorney's fees for time that was "necessitated by [her] own negligence."  In re Deuel, 482 B.R. 323, 333 (S.D. Cal. 2012); see also, e.g., Cortes v. Metro. Life Ins. Co., 380 F. Supp. 2d 1125, 1133 (C.D. Cal. 2005) (holding that the plaintiff's attorney could not bill hours spent preparing an ex parte application for contempt based on defendant's failure to pay benefit checks pursuant to a court order when defendant sent those checks upon request).  The court therefore reduces Libet's time by ten hours, equivalent to the amount of time she billed on these tasks.[8]

### e.  Paralegal Time

Defendants object to several billing entries for paralegal time on the basis that this time consists of non-billable secretarial or clerical tasks.  (Defs.' Opp'n at 9.)  As a general rule, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." Jenkins, 491 U.S. at 288 n.10.  Those tasks include, but are not limited to: creating indexes for a binder; filing emails, memoranda, and other correspondence; updating the case calendar with new dates; copying, scanning, and faxing documents; and filing or serving documents.  Prison Legal News, 561 F. Supp. 2d

---

[8]   That time consists of the following time entries, as noted in defendants' itemized statement of objections: 141 (3.00); 144 (2.00); 149 (1.00); and 151 (4.00).

1   at 1102.  In order to recover for this time, "plaintiff[s] must

2   show that such expenses are not subsumed in the attorney[s']

3   hourly rate and that billing secretarial expenses separately is

4   the prevailing practice in this forum."  <u>Joe Hand Promotions,</u>

5   <u>Inc. v. Albright</u>, Civ. No. 2:11-2260 WBS CMK, 2013 WL 4094403, at

6   *3 (E.D. Cal. Aug. 12, 2013) (citing <u>Trs. of Const. Indus. &</u>

7   <u>Laborers Health & Welfare Trust v. Redland Ins. Co.</u>, 460 F.3d

8   1253, 1257 (9th Cir. 2006)).

9           Having reviewed plaintiffs' billing statements, the

10  court determines that 9.45 hours are comprised of purely clerical

11  or secretarial tasks.[9]  Plaintiffs have not provided any evidence

12  that billing separately for these tasks is the prevailing

13  practice in this district.  <u>See</u> <u>Albright</u>, 2013 WL 4094403, at *3.

14  Those hours are therefore reduced from the total number of hours

15  billed by plaintiffs for paralegal services.  The court also

16  finds that eleven hours[10] of paralegal time were improperly block

17  billed and reduces that time by twenty percent, or 2.2 hours.

18  Defendants provide no specific reason that any other paralegal

19  time is "excessive, redundant, or otherwise unnecessary," <u>McCown</u>,

20  565 F.3d at 1102, and the court will not reduce those hours on

---

21          [9]   That time consists of the following time entries, as
22  noted in defendants' itemized statement of objections: 1 (0.30);
    2 (0.50); 5 (0.50); 7 (0.30); 17 (0.30); 22 (0.10); 24 (0.10); 31
23  (0.01); 32 (0.10); 36 (0.25); 37 (0.10); 44 (0.10); 51 (0.25); 62
    (0.10); 68 (0.25); 69 (0.25); 70 (0.10); 71 (0.10); 73 (0.25); 74
24  (0.10); 75 (0.10); 76 (0.25); 77 (0.30); 79 (0.30); 80 (0.30); 82
    (0.10); 83 (0.10); 91 (0.25); 92 (0.10); 98 (0.10); 99 (0.20);
25  101 (0.20); 114 (0.10); 118 (0.10); 122 (0.10); 125 (0.30); 132
    (0.25); 134 (0.25); 138 (0.30); 142 (0.10); 180 (0.75); 192
26  (0.50); 201 (0.20); 218 (0.20); and 234 (0.75).
27          [10]  That time consists of the following time entries, as
    noted in defendants' itemized statement of objections: 172
28  (5.00); 174 (3.00); and 178 (3.00).

1    this basis.  Between these adjustments, the court reduces

2    plaintiffs' paralegal time by a total of 11.65 hours.

3          Having accounted for any time that is "excessive,

4    redundant, or otherwise unnecessary," id., the court finds that

5    Burris reasonably expended 442.31 hours, Libet reasonably

6    expended 363.84 hours, Lacy reasonably expended 345.66 hours, and

7    the paralegals reasonably expended 134.85 hours.

8          2.   Reasonable Hourly Rate

9          "In addition to computing a reasonable number of hours,

10   the district court must determine a reasonable hourly rate to use

11   for attorneys and paralegals in computing the lodestar amount."

12   Gonzalez, 729 F.3d at 1205 (citation omitted).  A reasonable

13   hourly rate is not defined "by reference to the rates actually

14   charged by the prevailing party."  Chalmers v. City of Los

15   Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).  Rather, "[t]he

16   Supreme Court has consistently held that reasonable fees 'are to

17   be calculated according to the prevailing market rates in the

18   relevant community.'"  Van Skike v. Dir., Off. of Workers' Comp.

19   Programs, 557 F.3d 1041, 1046 (9th Cir. 2009) (quoting Blum v.

20   Stetson, 465 U.S. 886, 895 (1984)).

21         "Generally, when determining a reasonable hourly rate,

22   the relevant community is the forum in which the district court

23   sits."  Prison Legal News, 608 F.3d at 454 (internal quotation

24   marks omitted).  It is appropriate to rely on rates outside the

25   local forum only where "local counsel was unavailable, either

26   because they are unwilling or unable to perform because they lack

27   the degree of experience, expertise, or specialization required

28   to handle properly the case."  Barjon v. Dalton, 132 F.3d 496,

1  500 (9th Cir. 1997) (quoting Gates v. Deukmejian, 987 F.2d 1392,

2  1405 (9th Cir. 1992) (internal quotation marks omitted)).

3       Plaintiffs have provided no evidence demonstrating that

4  local counsel was unavailable or unable to handle a case of this

5  nature.  Judges in this district have consistently applied "the

6  prevailing market rate for a civil rights attorney practicing in

7  the Sacramento area," even in cases considerably more complex

8  than this one.  Knox v. Chiang, Civ. No. 2:05-2198 MCE CKD, 2013

9  WL 2434606, at *7 (E.D. Cal. Jun. 5, 2013) (applying Sacramento

10 rates in a case regarding union dues for public sector employees

11 which proceeded to the Ninth Circuit and the Supreme Court on

12 appeal); see also, e.g., Lehr v. City of Sacramento, Civ. No.

13 2:07-1565 MCE GGH, 2013 WL 1326546, at *4 (E.D. Cal. Apr. 2,

14 2013) (applying Sacramento rates in a complex class action

15 asserting unconstitutional treatment of homeless individuals in

16 Sacramento).

17       Plaintiffs rely on Valdivia v. Brown, 848 F. Supp. 2d

18 1141, 1143 (E.D. Cal. 2011) (Karlton, J.), in support of the

19 proposition that San Francisco, rather than Sacramento, is the

20 relevant community in this matter.  (Pls.' Reply at 5 (Docket No.

21 196).)  There, the court found that San Francisco rates were

22 appropriate in a complex class action involving the

23 constitutional rights of parolees because the plaintiffs had

24 "tendered evidence" that "there were no Sacramento firms

25 experienced and capable enough, and willing to undertake the

26 case."  Id.  Because plaintiff has not provided evidence of this

27 sort or identified any other reasons that San Francisco rates are

28 appropriate, the court will apply Sacramento billing rates in

1   this matter.[11]  See Barjon, 132 F.3d at 500.

2          The hourly rates that plaintiffs request--$800 for

3   Burris, $400 for Libet, $265 for Lacy, and $150 to $180 for

4   paralegals--significantly exceed prevailing market rates in the

5   Sacramento area.  Although Burris has nearly thirty-five years of

6   legal experience and has a record of high-profile representations

7   in civil rights matters, (see Burris Decl. ¶¶ 1-15), judges in

8   this district have typically awarded rates between $350 and $450

9   to attorneys of comparable skill and experience.  See, e.g.,

10  Lehr, 2013 WL 1326546, at *7 (awarding $400 per hour to a "highly

11  qualified civil rights attorney with over 40 years of relevant

12  litigation experience"); Knox, 2013 WL 2434606, at *7 (finding

13  that "the prevailing hourly rate for experienced civil rights

14  attorneys practicing in the Sacramento area does not exceed

15  $400," and awarding $450 an hour in light of attorney's

16  experience and their success before the Supreme Court); Jones v.

17  County of Sacramento, Civ. No. 2:09-1025 DAD, 2011 WL 3584332, at

18  *8 (E.D. Cal. Aug. 12, 2011) (finding that an hourly rate of $350

19  for a civil rights attorney with thirty-five years of litigation

20  experience was "in line with those prevailing in the Sacramento

21  market").  An hourly rate of $400, the rate suggested by

22

23  ───────────────
        [11]    Plaintiffs also assert that Burris "would no longer be
24  able to practice in this court" if he is not compensated at his
    normal rate of $800 an hour, and that his potential departure
25  from the Eastern District of California "is a real threat to
    justice in this jurisdiction."  (Pls.' Reply at 5-6.)  While the
26  court is mindful of the need to set fees at a level that will
    attract skilled attorneys to take on civil rights cases, there
27  are many qualified attorneys in this district who do not believe
    they are entitled to $800 an hour--twice the prevailing market
28  rate for attorneys of Burris's caliber--for their work.

1    defendants, is therefore appropriate for Burris.

2         Libet has practiced since 1983, and has practiced

3    primarily in civil rights litigation since 1989.  (See Amended

4    Decl. of Gayla B. Libet Ex. 1 (Docket No. 190-1).)  Judges in

5    this district have found that a rate between $250 and $280 is

6    appropriate for civil rights attorneys with comparable

7    experience.  See, e.g., Lehr, 2013 WL 1326546, at *7-8 (awarding

8    an attorney admitted in 1975 who assisted experienced civil

9    rights attorneys $260 per hour); Jones, 2011 WL 3584332, at *9-10

10   (finding that an hourly rate of $250 was appropriate for an

11   attorney with ten years of civil litigation experience); Cal.

12   Pro-Life Council, Inc. v. Randolph, Civ. No. 2:00-1698 FCD GGH,

13   2008 WL 4453627, at *4 (E.D. Cal. Sep. 30, 2008) (noting that

14   prevailing rates in Sacramento for partners with over ten years

15   of experience range between $260 and $280).  In light of her

16   experience, the court determines that an hourly rate of $280 is

17   appropriate for Libet.

18        Lacy has practiced since 2007, and has practiced

19   primarily in civil rights litigation since 2011.  (See Burris

20   Decl. Ex. 3 (Docket No. 183-3).)  The market rate for associates

21   with comparable experience ranges "between $150 and $175 per

22   hour."  Albright, 2013 WL 4094403, at *3 (citations omitted); see

23   also, e.g., Yeager, 2010 WL 2303273, at *6 (finding that $150 is

24   a reasonable hourly rate for associates in the Eastern District);

25   Broad. Music Inc. v. Antigua Cantina & Grill, LLC, Civ. No. 2:12-

26   1196 KJM DAD, 2013 WL 224461, at *1 (E.D. Cal. May 21, 2013)

27   (awarding an hourly rate of $175).  The court therefore

28   determines that an hourly rate of $175 is appropriate for Lacy.

Finally, courts in this district have generally found that $75 is an appropriate hourly rate for paralegals.  See, e.g., Albright, 2013 WL 4094403, at *3 (citations omitted) (awarding an hourly rate of $75 for paralegals); Friedman v. Cal. State Emps. Ass'n, 2:00-101 WBS DAD, 2010 WL 2880148, at *4 (E.D. Cal. July 21, 2010) (noting that "the paralegal rate favored in this district is $75 per hour" (citations and internal quotation marks omitted)).  The court will therefore apply an hourly rate of $75 for the time expended by plaintiffs' paralegals.

In sum, the court finds that Burris reasonably billed 442.31 hours at an hourly rate of $400, that Libet reasonably billed 363.84 hours at an hourly rate of $280, that Lacy reasonably billed 345.66 hours at an hourly rate of $175, and that the paralegals reasonably billed 134.85 hours at an hourly rate of $75.  This results in a lodestar of $349,403.25, calculated as follows:

| | | | | | |
|---|---|---|---|---|---|
| Burris: | 442.31 | x | $400 | = | $176,924.00 |
| Libet: | 363.84 | x | $280 | = | $101,875.20 |
| Lacy: | 345.66 | x | $175 | = | $60,490.50 |
| Paralegals: | 134.85 | x | $75 | = | $10,113.75 |
| | | | | | $349,403.25 |

B.   Adjustment to the Lodestar

Once the court has computed the lodestar, there is a "'strong presumption' that the lodestar is the reasonable fee." Crawford v. Astrue, 586 F.3d 1142, 1149 (9th Cir. 2009) (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).  However, the Ninth Circuit has emphasized that the district court must consider "whether it is necessary to adjust the presumptively

21

reasonable lodestar figure on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation." Morales, 96 F.3d at 363-64 (citations omitted).  Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 670.  "The court should consider the factors established by Kerr, but need not discuss each factor."  Eiden v. Thrifty Payless Inc., 407 F. Supp. 2d 1165, 1168 n.4 (E.D. Cal. 2005) (Shubb, J.) (citing Sapper v. Lenco Blade, Inc., 704 F.2d 1069, 1073 (9th Cir. 1983)).

Here, defendants argue that the lodestar award should be reduced to account for plaintiffs' limited success at trial.[12] Both the Supreme Court and the Ninth Circuit have emphasized that "the extent of a plaintiff's success is a crucial factor for determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."  Hensley, 461 U.S. at 440; see also

---

[12]   The extent of the plaintiff's success or the "results obtained" is frequently subsumed within the calculation of the lodestar itself.  See Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988); Morales, 96 F.3d at 364 n.9.  Because the court has not considered the "results obtained" as part of its initial calculation of the lodestar, the court may adjust the lodestar separately to account for plaintiffs' limited success so long as it "only makes one adjustment per factor."  Id.

1   McCown, 565 F.3d at 1103 (holding that attorney's fees "must be

2   adjusted downward where the plaintiff has obtained limited

3   success on his pleaded claims, and the result does not confer a

4   meaningful public benefit").

5          The Supreme Court has identified "two questions [that]

6   must be addressed" in conducting this inquiry.  Hensley, 461 F.3d

7   at 434.  First, the court must determine whether "the plaintiff

8   fail[ed] to prevail on claims that were unrelated to the claims

9   on which he succeeded[.]"  Id.  "[C]laims are unrelated if the

10  successful and unsuccessful claims are distinctly different both

11  legally and factually; claims are related, however, if they

12  involve a common core of facts or are based on related legal

13  theories."  Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005)

14  (citations and internal quotation marks omitted) (alterations in

15  original).  If the successful claims are unrelated to the

16  unsuccessful claims, "the hours expended on the unsuccessful

17  claims should not be included in the fee award."  Id.

18         Here, all of plaintiffs' claims arise out of a single

19  incident in which Patzer, Jensen, and Potts used force in the

20  process of placing plaintiffs under arrest.  Because plaintiffs'

21  claims arise out of a "common core of facts," Dang, 422 F.3d at

22  813, the court may "not attempt to divide the request for

23  attorney's fees on a claim-by-claim basis."  McCown, 565 F.3d at

24  1103.  "Instead, the court must proceed to the second part of the

25  analysis and focus on the significance of the overall relief

26  obtained by [plaintiffs] in relation to the hours reasonably

27  expended on the litigation."  Id. (citation and internal

28  quotation marks omitted).

In conducting the second portion of the Hensley inquiry, the court should "give primary consideration to the amount of damages awarded as compared to the amount sought." Farrar v. Hobby, 506 U.S. 103, 114 (1992).  However, "the Supreme Court has disavowed a test of strict proportionality."  McCown, 565 F.3d at 1104 (citing City of Riverside v. Rivera, 477 U.S. 561, 576 (1986) (Powell, J., concurring in the judgment)); see also Hensley, 461 U.S. at 435 n. 11 (rejecting "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon").  Rather, the court must also consider the "excellence of the overall result," including the extent to which a plaintiff's success "served the public interest by vindicating important constitutional rights" or provided the "public benefit of deterring unconstitutional conduct by law enforcement officials" in determining its fee award.  McCown, 565 F.3d at 1104-05.

On the one hand, plaintiffs did not obtain the full extent of the relief that they sought.  The jury did not find that any defendant was liable under any of plaintiff's state-law claims.  The jury also did not find Patzer liable on any claim. The jury found only that Potts and Jensen used excessive force against Deocampo, and awarded Deocampo only $50,000 in damages-- far less than the $300,000 in general damages, in addition to special and punitive damages, sought by plaintiffs in their Complaint.  (See Docket No. 1.)  Courts in this district have imposed reductions of fifty percent or more in light of similarly partial success.  See, e.g., Jones v. McGill, Civ. No. 1:08-396 LJO DLB, 2009 WL 1862457, at *5 (E.D. Cal. June 29, 2009)

1   (reducing attorney's fees over seventy-five percent when the

2   plaintiff obtained a recovery of only $9,900 against one

3   defendant on his excessive force claims); Beecham, 2009 WL

4   3824793, at *5 (applying a downward adjustment of fifty percent

5   to the Lodestar when plaintiffs obtained only $33,400 in damages

6   out of the $1.8 million they sought).

7           On the other hand, plaintiffs successfully persuaded

8   the jury that two police officers had used excessive force

9   against Deocampo and that their conduct was malicious,

10  oppressive, or in reckless disregard of Deocampo's rights, which

11  is an impressive accomplishment in its own right.[13]  See Jones,

12  2011 WL 3584332, at *18 ("Achieving such a verdict is no easy

13  task and obtaining the latter finding by the jury is even more

14  difficult.").  Plaintiffs' victory, while limited, also achieved

15  a significant nonmonetary result "because successful suits act as

16  a deterrent to law enforcement and serve the public purpose of

17  helping to protect the plaintiff and persons like him from being

18  subjected to similar unlawful treatment in the future."  Mendez

19  v. County of San Bernardino, 540 F.3d 1109, 1128 (9th Cir. 2008)

20  (citation and internal quotation marks omitted); see also McCown,

21  565 F.3d at 1105 (noting that courts may "consider the public

22  benefit of deterring unconstitutional conduct by law enforcement

23  officials in determining the appropriate fee" (citing Morales, 96

24  F.3d at 364)).  Several judges of this district have found that

25          [13]    As the court indicated at oral argument, Deocampo was

26  at least as interested in being vindicated with a favorable
    verdict as he was with a monetary recovery.  This would explain,

27  for instance, why Deocampo declined to settle the case before
    trial even when defendants presented him with a reasonable

28  settlement offer.

1    these concerns militate in favor of a small reduction or no

2    reduction in the lodestar.  See, e.g., Jones, 2011 WL 3584332, at

3    *19 (applying a twenty-five percent reduction); Lehr, 2013 WL

4    1236545, at *15 (applying no reduction to the lodestar).

5         Having considered these factors, the court concludes

6    that a twenty-five percent reduction in the lodestar is

7    appropriate.  Accordingly, the court will reduce the lodestar

8    amount by twenty-five percent to $262,052.44.

9         C.   Fees on Fees

10        In addition to fees awarded for success in the

11   litigation, a prevailing party under Section 1988 is also

12   entitled to recover fees for work performed in preparing the

13   motion for attorney's fees itself.  Camacho v. Bridgeport Fin.,

14   Inc., 523 F.3d 973, 980 (9th Cir. 2008) ("In statutory fee cases,

15   federal courts, including our own, have uniformly held that time

16   spent in establishing the entitlement to and amount of the fee is

17   compensable." (citing In re Nucorp Energy, Inc., 764 F.2d 655,

18   659-60 (9th Cir. 1985)).  "Attorney's fees requests for work

19   litigating attorney's fees are treated the same as for work done

20   on the merits of a case."  Winterstein v. Stryker Corp. Grp. Life

21   Ins. Plan, 262 Fed. App'x 841, 843 (9th Cir. 2008) (citing

22   Thompson v. Gomez, 45 F.3d 1365, 1367-68 (9th Cir. 1995)); see

23   also Camacho, 523 F.3d at 982-83 (emphasizing that district

24   courts must apply the lodestar approach when awarding fees on

25   fees).

26        Plaintiffs' attorney Pamela Y. Price has submitted a

27   billing statement showing that she spent 35.75 hours working on

28   this motion for attorneys' fees.  (Docket No. 189-1.)  The court

finds that two entries totaling 18.7 hours of time are inappropriately block billed and imposes a twenty percent reduction on those hours, totaling 3.74 hours.[14]  After adjusting Price's billing statement to account for any hours that are "excessive, redundant, or otherwise unnecessary," McCown, 565 F.3d at 1102, the court determines that Price reasonably expended 32.01 hours working on this motion.

Defendants argue that Price's hourly rate should be reduced from $700 to an hourly rate between $175 and $250 because she performed no substantive work in litigating the case beyond her involvement in the fees motion.  (See Defs.' Supplemental Opp'n at 2 (Docket No. 195).)  Defendants have not cited, and the court cannot identify, any authority for the proposition that an attorney is entitled to a lower hourly rate for work performed on a motion for attorney's fees than for work performed on other tasks in the litigation.  Several judges in this district have awarded fees on fees at the same hourly rate as fees for work on the merits.  See, e.g., Wal-Mart Stores, Inc. v. City of Turlock, 483 F. Supp. 2d 1023, 1042 (E.D. Cal. 2007) (Wanger, J.); Cummings v. Connell, 177 F. Supp. 2d 1079, 1090 (E.D. Cal. 2001) (Shubb, J.), rev'd in part on other grounds, 316 F.3d 886 (9th Cir. 2003).  To the extent that work on the fees motion is less novel or complex than work on the merits, that distinction is subsumed within the calculation of the lodestar itself.  See Morales, 96 F.3d at 364 n.9.

Although it is not appropriate to reduce Price's hourly

---

[14]   This time includes two billing entries on November 6, 2013, for 6.2 and 12.5 hours.  (Docket No. 189-1.)

rate simply because she worked exclusively on the fees motion, an hourly rate of $700 is excessive.  Because Price has practiced for over three decades and has extensive experience with civil rights actions, including successful appeals before the Ninth Circuit and the Supreme Court, (see Decl. of Pamela Y. Price Ex. A (Docket No. 186-1)), the court determines that an hourly rate of $400, the same rate as Burris, is reasonable.  Multiplied by 32.01 hours, this amounts to a total of $12804.

Price's billing statement also shows that she incurred $1716.40 in expenses, of which $1637.50 is for "billing services."  The court is unclear what these "billing services" consist of or why they cost $1637.50.  Assuming that this expense reflects the time that Price spent preparing billing statements as part of this attorney's fees motion, the court will reduce this expense by three-sevenths, the same reduction it applied to her hourly rate, resulting in a total expense of $935.71 for billing services and a total of $1014.61 in expenses.  Along with her fees, this results in a total fee award of $13818.61.[15]

D.    Expenses[16]

_____

[15]    This award is based on the fee statement that Price submitted on December 5, 2013.  If Price has incurred additional hours or expenses litigating this case since that date, she may re-open the matter and submit a comprehensive statement of the time and expense she has incurred on this motion.  The court will apply its independent judgment with respect to whether Price is entitled to additional fees and does not require additional briefs or other papers from either side on this issue.

[16]    Plaintiffs have also submitted a Bill of Costs pursuant to Federal Rule of Civil 54(d) and Local Rule 292.  However, these expenses are properly characterized as a part of an award of attorney's fees, rather than as taxable costs.  See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986 (noting that "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are

1    "Under § 1988, the prevailing party may recover as part

2  of the award of attorney's fees those out-of-pocket expenses that

3  would normally be charged to a fee paying client." <u>Dang</u>, 422

4  F.3d at 814 (citations and internal quotation marks omitted).

5  "Such out-of-pocket expenses are recoverable when reasonable."

6  <u>Id.</u>

7    Defendants contend that plaintiff may not recover

8  expenses under Section 1988 for expert witness fees.  (<u>See</u> Defs.'

9  Opp'n at 18.)  Subsection 1988(c) permits a prevailing plaintiff

10  in an action under Section 1981 or 1981(a) to recover expert

11  fees.  However, a prevailing plaintiff may not recover expert

12  fees in an action under Section 1983.  <u>W. Va. Univ. Hosps. v.</u>

13  <u>Casey</u>, 499 U.S. 83, 102 (1991); <u>Ruff v. County of Kings</u>, 700 F.

14  Supp. 2d 1225, 1243 (E.D. Cal. 2010) (Wanger, J.) (noting that

15  "cases are uniform that Section 1988(c) does not apply to a

16  Section 1983 action").  The court will therefore not permit

17  plaintiffs to recover the $6,420 they incurred for expert witness

18  fees.

19    Defendants also object that plaintiffs cannot recover

20  expenses incurred for the services of Ralph Hernandez, a private

21  investigator, or Joshua Dodds, who provided technical assistance

22

23  recoverable as attorney's fees" (emphasis added)); <u>Dang</u>, 422 F.3d

24  at 814 (same).  Because these expenses comprise a portion of the
    attorney's fee award itself, defendants' objections based on the

25  standards applicable to a Bill of Costs under 28 U.S.C. § 1920,
    Federal Rule of Civil Procedure 54(d), and Eastern District Local

26  Rule 292 are misplaced.  <u>See</u> <u>id.</u> (holding that expenses incurred
    for obtaining an abstract of judgment were recoverable under §

27  1988 notwithstanding the plaintiff's failure to include this
    expense in his bill of costs).

28

1    with document management and video presentation equipment during

2    the trial.  (<u>See</u> Defs.' Opp'n at 18.)  Courts have found both

3    types of expenses to be reasonable.  <u>See, e.g.</u>, <u>Harris v.</u>

4    <u>Marhoefer</u>, 24 F.3d 16, 19-20 (9th Cir. 1994) (holding that

5    expenses incurred for an investigator were compensable under §

6    1988, even if they might not be taxable as costs under 28 U.S.C.

7    § 1920 or applicable local rules); <u>POM Wonderful LLC v. Ocean</u>

8    <u>Spray Cranberries, Inc.</u>, Civ. No. 09-565 DDP RZx, 2012 WL

9    4936470, at *1 (C.D. Cal. Oct. 17, 2012) (allowing prevailing

10   defendant to recover costs incurred for trial presentation

11   expenses).  There is nothing to indicate that the fees paid to

12   Hernandez and Dodds were unreasonable, and the court will

13   accordingly permit plaintiffs to recover for those expenses.

14          Having reviewed the remainder of the billing entries

15   submitted by plaintiffs, the court determines that the expenses

16   listed are reasonable and of the sort that would ordinarily be

17   charged to a fee-paying client.  <u>See Dang</u>, 422 F.3d at 814.

18   Accordingly, the court will permit plaintiffs to recover

19   $38,626.68 in expenses.[17]

20          In sum, the court will award $314497.73 in attorney's

21   fees, comprised as follows:

22       Adjusted Lodestar:   $349,403.25 x   0.75   =  $262,052.44

23

24          [17]   This figure consists of the following: $26,449.00 in
     out-of-pocket costs, including "photocopies, document, exhibit
25   and chart reproduction expenses, postage, service of process
     fees, investigation expenses, mileage and travel expenses, and
26   long distance telephone calls"; $5,303.38 for the investigative
     services of Ralph Hernandez; $621.12 for court reporter costs;
27   and $6253.18 for costs of video and document management services
     at trial.  (<u>See</u> Burris Decl. ¶¶ 42-46.)
28
                                    30

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Fees on Fees: | $13818.61 | x | 1.0 | = | $13818.61 |
| 2 | Expenses: | $38,626.68 | x | 1.0 | = | $38,626.68 |
| 3 | | | | | | $314497.73 |

II.  Defendants' Bill of Costs

          Both Federal Rule of Civil Procedure 54(d)(1) and Local
Rule 292(f) permit a prevailing party to tax costs to the losing
side.  Rule 54(d)(1) "creates a presumption in favor of awarding
costs to a prevailing party, but vests in the district court
discretion to refuse to award costs."  Ass'n of Mex.-Am.
Educators v. California, 231 F.3d 572, 591 (9th Cir. 2000) (en
banc).  Both the Ninth Circuit and numerous judges in this
district have held that the court may require a party to bear its
own costs "[i]n the event of a mixed judgment."  Amarel v.
Connell, 102 F.3d 1494, 1523 (9th Cir. 1995) (9th Cir. 1996); see
also, e.g., Tubbs v. Sacramento Cnty. Jail, 258 F.R.D. 657, 659
(E.D. Cal. 2009 (Karlton, J.); Endurance Am. Specialty Ins. Co.
v. Lance-Kashian & Co., Civ. No. 1:10-1284 LJO DLB, 2011 WL
6012213, at *2 (E.D. Cal. Dec. 1, 2011) ("Given the mixed
judgment and good faith dispute over difficult issues, an award
of costs is unwarranted and each side is to bear its respective
costs.").

          Here, the jury found that two of the three defendants
who went to trial were liable under Section 1983, and found that
the third defendant, Jeremy Patzer, had acted violently towards
the plaintiffs.  (Docket No. 165.)  And while defendants were
technically victorious on every claim but one, that partial
success does not mandate an award of costs.  See Tubbs, 258
F.R.D. at 661 (denying costs to the defendants in a civil rights

31

1    action when the plaintiff only prevailed on some claims but not

2    others); <u>Cole v. Munoz</u>, Civ. No. 1:09-00476 SAB, 2013 WL 3892955,

3    at *2 (E.D. Cal. July 26, 2013) (declining to award costs when

4    plaintiff prevailed on excessive force claims against two of the

5    three defendants).  Accordingly, the court will require

6    defendants to bear their own costs in this action.

7         IT IS THEREFORE ORDERED that:

8         (1)  plaintiffs' motion for attorney's fees be, and the

9    same hereby is, GRANTED in the amount of $314,497.73;

10        (2)  defendants' motion for costs be, and the same

11   hereby is, DENIED.

12   Dated:  February 24, 2014

13

WILLIAM B. SHUBB

14   UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28